UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JESSIE CHAVEZ,<br><br>    Plaintiff,<br><br>        v.<br><br>PVH CORPORATION, et al.,<br><br>    Defendants. | Case No.: 13-CV-01797-LHK<br><br>**ORDER DENYING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 97 |

Before the Court is the parties' joint motion for final approval of class action settlement. ECF No. 97. The Court held a hearing on the motion for final approval on January 15, 2015. Having considered the motion, the accompanying filings, declarations, and exhibits, and the oral argument presented at the hearing, the Court DENIES the motion for final approval, for the reasons stated below.

**I.  BACKGROUND**

Plaintiffs Jessie Chavez and Anabel Armenta (collectively, "Plaintiffs") are former and current employees of Defendants PVH Corporation, Tommy Hilfiger Retail, LLC, and PVH Retail Stores LLC (collectively, "Defendants"). Plaintiffs have brought this putative class action on behalf of current former employees of Defendants, on the grounds that the Defendants allegedly violated provisions of the California Labor Code by paying employees with payroll debit cards,

1

and providing employees with inaccurate or incomplete wage statements. ECF No. 40-1 ("Second Am. Compl.") ¶¶ 25-33. The instant action is one of three putative class action lawsuits filed against Defendants that raise similar and overlapping allegations regarding the Defendants' use of payroll debit cards: *Scott-George v. PVH Corporation*, 13-CV-00441-TLN, before Judge Nunley of the Eastern District of California ("*Scott-George*"); and *Lapan et al. v. PVH Corporation*, 13-CV-5006-LHK, which is a case related to *Chavez* that is also before this Court ("*Lapan*"). Because the *Scott-George* and *Lapan* actions are relevant to this Order, the Court summarizes them and their relationship to the instant lawsuit below.

### A. The *Scott-George* Plaintiff Files Her Lawsuit

On January 29, 2013, the *Scott-George* plaintiff filed her lawsuit against PVH Corporation in the California Superior Court for Nevada County. ECF No. 113-2, Ex. B. This was the first of the three lawsuits against PVH Corporation. The complaint in *Scott-George* alleged PVH Corporation failed to pay wages for meal breaks, rest breaks, bag checks, overtime, double overtime, vested vacation pay, and failed to provide compliant wage statements, in violation of Labor Code §§ 201-203, 226(a), 226.7, 227.3, 510, 512(a), 1194, 1198. *See id.* The *Scott-George* Complaint also brought a claim for unlawful business practices based on the foregoing allegations in violation of Business and Professions Code §§ 17200 *et seq. Id.* The *Scott-George* complaint did not contain any allegations related to payroll debit cards. *Id.*

On March 5, 2013, the *Scott-George* action was removed to U.S. District Court in the Eastern District of California pursuant to the Class Action Fairness Act. *Id.*, Ex. C ¶ 1.

### B. The *Chavez* Plaintiff Files This Lawsuit

On March 20, 2013—approximately two months after the *Scott-George* plaintiff filed her lawsuit, and shortly after *Scott-George* was removed to federal court—Chavez filed the instant lawsuit in Santa Clara County Superior Court. ECF No. 113-2, Ex. A. The original *Chavez* Complaint alleged that Defendants had a "pattern and practice" of paying employees their final wages upon termination via payroll debit cards. *Id.* ¶ 32. Chavez further alleged that these payroll

debit cards required fees for usage, which resulted in employees not receiving all wages owed upon termination. *Id*. Chavez alleged that this use of payroll debit cards violated Labor Code §§ 201-203. *Id*. Chavez also alleged that Defendants failed to provide wage statements that complied with California law and thereby violated Labor Code § 226. *Id*. ¶¶ 35-38. Chavez sought to represent a class of all current and former employees of Defendants in California from March 20, 2012 through the present. *Id*. ¶ 17.

The instant lawsuit was removed to this Court on April 19, 2013. ECF No. 1. Since then, Chavez has amended the Complaint twice to add Armenta as a class representative and to add classwide claims under the Private Attorneys General Act, Labor Code § 2698 *et seq*., and Business and Professions Code §§ 17200 *et seq*.[1] ECF Nos. 14 & 40. However, Plaintiffs' class-wide allegations regarding the use of payroll debit cards and the provision of noncompliant wage statements have remained unchanged. At no point have the *Chavez* Plaintiffs alleged any claims for failure to pay wages for meal breaks, rest breaks, bag checks, overtime, double overtime, or vested vacation pay, as the *Scott-George* plaintiff has alleged.

C. **The *Lapan* Plaintiffs File Their Lawsuit**

On October 25, 2013—approximately seven months after *Chavez* was filed—the plaintiffs in *Lapan* filed their lawsuit against PVH Corporation. Case No. 13-CV-05006-LHK, ECF No. 1. Like *Chavez*, the *Lapan* complaint alleged that PVH Corporation paid employees through a payroll card program which required that employees pay certain fees and charges. *Id*. ¶ 2. This allegedly resulted in employees not receiving their full wages. *Id*. The *Lapan* plaintiffs alleged that PVH Corporation's use of payroll debit cards constituted a common law breach of contract, and violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as well as numerous provisions of the California Labor Code, including Labor Code § 203. *Id.* ¶¶ 80-82. The *Lapan* plaintiffs sought

---

[1] In his First Amended Complaint, Chavez also added five individual claims: three causes of action for alleged violations of the Fair Employment and Housing Act; one cause of action for an alleged violation of the California Family Rights Act; and one cause of action for unlawful retaliation. ECF No. 14-1, ¶¶ 38-80. Chavez subsequently dismissed his individual claims with prejudice. ECF No. 101.

to represent several classes of all current and former employees of PVH Corporation in the United States and in California who, among other things, were paid via payroll debit cards and charged fees in connection with those cards. *Id*. ¶¶ 37-40. The *Lapan* plaintiffs, much like the Plaintiffs in *Chavez*, have not alleged any claims for failure to pay wages for meal breaks, rest breaks, bag checks, overtime, double overtime, or vested vacation pay independent of their pay card claim, as the *Scott-George* plaintiff has alleged.

### D. The *Scott-George* Plaintiff Amends Her Complaint To Add A Payroll Card Debit Claim

On October 30, 2013—approximately seven months after *Chavez* was filed, and five days after *Lapan* was filed—the *Scott-George* plaintiff filed a Third Amended Complaint.[2] ECF No. 93-1, Ex. A. The Third Amended Complaint added, for the first time, a factual allegation that PVH Corporation paid its employees with payroll debit cards. *Id*. ¶ 25. The Third Amended Complaint alleged that employees of PVH Corporation had fees and other charges associated with the payroll debit cards involuntarily deducted from their wages, which resulted in a reduction of earned wages. *Id*. ¶ 26. The *Scott-George* plaintiff asserted these allegations regarding payroll debit cards as a further basis for her claims, including claims brought pursuant to Labor Code §§ 201-203. *Id*. ¶¶ 71-76.

### E. Procedural History Of The Instant Lawsuit

On January 2, 2014 (approximately two months after the *Scott-George* plaintiff amended her complaint to add allegations related to payroll debit cards), the parties in *Chavez* informed the Court in a joint statement that they had reached a preliminary settlement to resolve all class-wide claims in *Chavez*. ECF No. 44. On January 31, 2014, the parties filed a motion for preliminary approval of a class action settlement. ECF No. 50. The settlement class was defined as:

---

[2] The *Scott-George* plaintiff filed a First Amended Complaint on June 13, 2013, adding class action allegations. ECF No. 113-2, Ex. C. The *Scott-George* plaintiff subsequently filed a second amended complaint on August 27, 2013. ECF No. 113-3. Neither of these amended complaints raised allegations related to payroll debit cards.

4

Case No.: 13-CV-01797-LHK
ORDER DENIAL FINAL APPROVAL OF CLASS ACTION SETTLEMENT

> All current and former employees who worked for Defendants in California during any portion of the period from March 20, 2009 through the date of preliminary approval.

ECF No. 52, at 11. The settlement also defined a "Money Network Subclass" as:

> All current and former employees who worked for Defendants in California during any portion of the period from March 20, 2009 through the date of preliminary approval by the Court who were paid at any time via the Money Network payroll distribution service and who paid at least one fee or charge in connection with the use of the service.

*Id*. at 8. The agreement provided for a total settlement fund of $1,850,000. *Id*. at 6. After deducting the maximum amounts for attorneys' fees, litigation costs, enhancement awards, and PAGA penalties, approximately $1,276,250 would be distributed to class members who submitted timely claim forms pursuant to the terms of the settlement. *Id*. at 12. Members of the Money Network Subclass would receive reimbursement for all fees charged in connection with the payroll debit cards, after which the remaining amount in the settlement fund would be allocated to participating class members based on the total number of workweeks each class member worked. *Id*. at 14-16. The agreement also contained a reversionary clause which provided that the Defendants must pay at least 80 percent of the net settlement fund to class members who submitted valid and timely claim forms. ECF No. 50, at 3-4, 11. However, if after distribution there were funds remaining or unclaimed, then that amount would revert back to the Defendants. *Id*. at 21.

On June 5, 2014, counsel for the plaintiffs in *Lapan* filed an objection to the proposed settlement. ECF No. 57. This Court held a hearing on the motion for preliminary approval on June 19, 2014, and subsequently denied preliminary approval on June 20, 2014. ECF No. 63. The Court found that the reversionary clause might disincentivize the parties from maximizing class members' participation, and raised the possibility of a conflict of interest between the plaintiffs' counsel and the class members. *Id*. at 3. The Court therefore found that the proposed settlement was not fair and adequate to the class members, and denied approval on that basis. *Id*.

On June 25, 2014, the parties filed an amended motion for preliminary approval. ECF No. 68. The amended settlement agreement was the same as the agreement which the Court declined to

1   approve, except that the parties removed the reversionary clause. *Id*. at 2-3. The Court granted

2   preliminary approval on July 17, 2014. ECF No. 73.

3         On August 18, 2014, the plaintiff in *Scott-George* filed a notice of pendency of other

4   action. ECF No. 76. This was the first filing in the instant litigation which alerted the Court to the

5   existence of the *Scott-George* case.[3] The next day, on August 19, 2014, the *Scott-George* plaintiff

6   filed a motion to intervene in the instant action. ECF No. 77. This Court subsequently denied the

7   motion to intervene on the grounds that it was untimely. ECF No. 106.

8         On October 7, 2014, the plaintiff in *Lapan* and a class member who is represented by the

9   *Scott-George* plaintiff counsel filed objections to the class action settlement. ECF Nos. 91 & 93.

10  On December 12, 2014, the *Lapan* plaintiffs withdrew their objection, ECF No. 107, leaving only

11  the objection from the class member who shares counsel with the *Scott-George* plaintiff. On

12  December 24, 2014, twelve days after the *Lapan* plaintiffs withdrew their objection, the parties in

13  *Lapan* filed a joint statement that they had reached a settlement and would file a motion for

14  preliminary approval. Case No. 13-CV-05006-LHK, ECF No. 71.

15        In his objection, the objector argued that the proposed settlement in *Chavez* had been the

16  result of a "reverse auction" whereby the Defendants sought to settle the *Chavez* claims for a

17  relatively low amount of money. ECF No. 93, at 3. The objector also alleged that the Defendants

18  intended to use the release in the *Chavez* settlement to bar claims brought pursuant to Labor Code

19  § 203 in *Scott-George*. *Id*. In addition, the objector claimed that the language of the release

20  provision in the *Chavez* settlement was impermissibly broad, as it released claims based on facts

---

[3] In the parties' filings in advance of the final approval hearing, and at the January 15, 2015 final approval hearing, there was some discussion over why the parties in the instant litigation did not notify the Court of the existence of the *Scott-George* matter. Defendants claim that they did not file a notice of pendency of *Scott-George* because "*Chavez* primarily concerned the alleged failure to pay wages due to payment using [payroll debit cards] and *Scott-George*, which is primarily a wage and hour case, did not include such a claim." ECF No. 110, at 2 n.2. Plaintiffs stated that they were not aware of the *Scott-George* action until Defendants notified Plaintiffs in a phone conversation that the *Scott-George* plaintiff amended her complaint to add a paycard claim "similar [to] . . . the current *Chavez* action." Supplemental Declaration of Larry Lee in Support of Final Approval, ECF No. 120, ¶ 2. This phone conversation took place on or about November 15, 2013. *Id*.

1  other than those alleged in the operative *Chavez* Complaint. *Id*.

2  The Plaintiffs and Defendants in *Chavez* denied that the settlement was the result of a
3  reverse auction. *See* ECF No. 110, at 4. They also asserted that the settlement release provision "is
4  expressly limited to claims based on the facts alleged in the Second Amended Complaint [in
5  *Chavez*]." *Id*.; *see also* ECF No. 113 at 9 ("[T]he Labor Code § 203 release provided in the current
6  settlement only apply to the facts alleged in this case, and does not apply to claims such as
7  overtime wages, meal breaks, or vacation wages, all of which were not alleged in this case.")
8  Therefore, the *Chavez* parties argued that the objection of the *Scott-George* plaintiff was meritless.

## II. LEGAL STANDARD

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Court approval involves a two-step process: (1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). The Court may issue final approval of a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

## III. ANALYSIS

The Court denies final approval on two bases. First, in spite of the parties' statements in their filings to the contrary and the language of the release provision, Defendants and Plaintiffs acknowledged at the final approval hearing that Defendants intend to use the *Chavez* release to bar claims under Labor Code § 203 based on facts other than those alleged in the operative *Chavez* Complaint. This would violate the rule in the Ninth Circuit that a class action settlement can only release claims based on an identical factual predicate as the claims alleged in the operative complaint. Second, because the notice sent to class members did not notify the class members that they may be releasing claims based on facts not alleged in the *Chavez* Complaint, or alert class members to the existence of the related *Scott-George* and *Lapan* actions, the settlement notice was

inadequate. Either of these two bases would be sufficient to deny final approval of the settlement.

## A. Violation of the Identical Factual Predicate Rule

In the Ninth Circuit when a district court approves a class action settlement, "a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992); *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only* where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted) (emphasis added). Put another way, a settlement may release claims that are "factually related" to the claims in the instant litigation. *Reyn's Pasta Bella*, 442 F.3d at 748. District courts in this Circuit have declined to approve settlement agreements where such agreements would release claims based on different facts than those alleged in the litigation at issue. *See, e.g.*, *Christensen v. Hillyard, Inc.*, No. 13-CV-04389 NC, 2014 WL 3749523, at *4 (N.D. Cal. July 30, 2014) (denying approval of settlement agreement where "[t]he settlement agreement does not limit released claims to those arising out of the facts alleged in the complaint"); *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013) (noting prior rejection of proposed settlement agreement because the released claims failed to "directly track the allegations in the complaint").

Here, the language of the settlement agreement indicates that the settlement would release all claims "arising from, or related to the facts occurring during the Settlement Class Period as alleged in the Second Amended Complaint, including . . . any other state or federal statute, rule and/or regulation, or similar causes of action relating to the payment of wages or reimbursement of wages . . . based on the claims that have been or could have been asserted in the Second Amended

Complaint." ECF No. 64, ¶ 34. On its face, the settlement would appear to release only those claims that were raised or could have been raised "related to the facts . . . as alleged in the Second Amended Complaint." *Id*. Indeed, this was the position the parties took in advance of the final approval hearing. ECF No. 110, at 4 (Defendants' statement that the settlement release provision "is *expressly limited to claims based on the facts alleged* in the Second Amended Complaint.") (emphasis added); ECF No. 113 at 9 (Plaintiffs' statement that "the Labor Code § 203 release provided in the current settlement *only apply to the facts alleged in this case*, and does not apply to claims such as overtime wages, meal breaks, or vacation wages, all of which were not alleged in this case.") (emphasis added).

However, at the January 15, 2015 final approval hearing, Defendants and Plaintiffs stated that the *Chavez* release would also release claims based on facts which were not alleged in *Chavez*. Specifically, Defendants and Plaintiffs took the position that a class member who agreed to the *Chavez* release would be releasing any claim for damages under Labor Code § 203 that were based on violations of California laws governing payments for meal breaks, rest breaks, bag checks, overtime, double overtime, and vested vacation pay, the claims asserted in *Scott-George*.[4] For instance, when the Court asked Defendants whether "the *Chavez* release releases the *Scott-George* Plaintiffs' claims under California Labor Code Section 203 for meal break, overtime, rest break, bag check, double overtime, and vested vacation pay," Defendants responded: "Yes." Jan. 15, 2015 Hr'g Tr. at 11:21-:25. When the Court sought further clarification on this issue, Defendants stated: "We believe that, that it's—once you get paid for 203 claims in one case . . . that person is not entitled to file other lawsuits and get 203 penalties." *Id.* at 11:1-:7. Plaintiffs also took this same position: when the Court asked Plaintiffs if Defendants were correct that "any relief under 203 is gone because once you've been compensated for one Labor Code 203 claim, you

---

[4] California Labor Code § 203 provides that "[i]f an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" for up to "30 days." Cal. Lab. Code § 203.

9

Case No.: 13-CV-01797-LHK
ORDER DENIAL FINAL APPROVAL OF CLASS ACTION SETTLEMENT

can't get a second or third compensation for that Labor Code § 203 claim," Plaintiffs responded, "That is how Labor Code § 203 is written, unfortunately." *Id.* at 12:22-13:3.

*Chavez* does not contain any allegations related to meal breaks, rest breaks, bag checks, overtime, double overtime, or vested vacation pay. *See* Second Am. Compl. Indeed, the only basis on which the Plaintiffs in *Chavez* seek damages under § 203 is the Defendants' alleged failure to pay wages owed by "issuing ATM cards as payment of wages" which "required fees for usage" and "did not allow employees to access all of the monies contained on such cards." *Id.* ¶ 27. Therefore, under the identical factual predicate rule, the *Chavez* release could only release claims for damages under § 203 based on Defendants' alleged practice of using payroll debit cards. *See Hesse*, 598 F.3d at 590 ("A settlement agreement may preclude a party from bringing a related claim in the future . . . but *only* where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted) (emphasis added). However, as Defendants and Plaintiffs stated during the preliminary approval hearing, both parties believe the release encompasses claims based not only on the use of payroll debit cards, but also any claim for damages under § 203 based on facts alleged in the *Scott-George* complaint. Where, as here, the release in a settlement agreement "does not limit released claims to those arising out of the facts alleged in the complaint," denial of final approval of the settlement is appropriate. *Christensen*, 2014 WL 3749523, at *4. Accordingly, because Defendants take the position that the settlement release will release claims for § 203 damages based on facts beyond the scope of the *Chavez* Complaint, the settlement would not be fair or reasonable to class members. *See* Fed. R. Civ. P. 23(e)(2) (court may approve class action settlement only after "finding that it is fair, reasonable, and adequate"). On this basis, the Court DENIES final approval.

### B. Inadequate Notice

In addition, the Court also finds that the *Chavez* settlement was not adequate because the notice packets sent to class members did not provide them with sufficient notice of the scope of released claims. Under Ninth Circuit precedent, potential members of a settling class must receive

the "'best notice that is practicable under the circumstances'" of the settlement. *Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(c)(2)(B)). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir. 1980)). However, notice is not adequate if it misleads potential class members. *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010).

Here, the notice that was mailed to potential class members informing them of the settlement agreement contained a provision detailing the claims that class members would release by participating in the settlement. Specifically, the notice stated that participating class members would release all claims "arising from, or related to the facts occurring the Settlement Class Period as alleged in the Second Amended Complaint, including . . . any other state or federal statute, rule and/or regulation, or similar causes of action relating to the payment of wages or reimbursement of wages . . . based on the claims that have been or could have been asserted in the Second Amended Complaint." ECF No. 64, at 41. On its face, the notice informs class members that they are only releasing claims which were raised or could have been raised "arising from, or related to the facts . . . as alleged in the Second Amended Complaint." *Id*.

However, as previously discussed, Defendants and Plaintiffs have taken the position that the settlement release would release claims for damages under § 203 that are based on facts *other* than those alleged in the operative *Chavez* Complaint, including claims brought in *Scott-George*. *See, e.g.*, Jan. 15, 2015 Hr'g Tr. at 11:21-:25. Therefore, the Court finds that the notice mailed to class members was inadequate for three reasons. First, the notice was inadequate because it did not inform class members that they may be releasing claims based on facts beyond those alleged in *Chavez*, a scope of the release about which class members may have desired to know and, if necessary, be heard. *See Churchill Vill., L.L.C.*, 361 F.3d at 575 (notice is satisfactory if it contains

11

"sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks omitted). Second and relatedly, the *Chavez* release informed class members that they were only releasing claims based on facts "as alleged in the Second Amended Complaint," even though Defendants and Plaintiffs take the position that the release encompasses claims based on facts other than those alleged in *Chavez*. Thus the release was misleading and therefore inadequate. *Shaffer*, 362 F. App'x at 631 ("Notice is not adequate if it misleads potential class members."). Third, the notice did not inform class members of the existence of related, pending litigation, including *Scott-George* and *Lapan*. Class members may have wanted to know about the existence of these related lawsuit in deciding whether to participate in the *Chavez* settlement. *Cf. Churchill Vill., L.L.C.*, 361 F.3d at 575 (finding that notice of settlement was adequate where the notice "listed the names, case numbers, and courts of pending actions in Illinois, Florida, New York, and Connecticut" that were related to the settling litigation).

The Court finds that the notice of settlement was not adequate as mandated by Rule 23(c)(2)(B). Accordingly, the Court DENIES final approval on this additional basis.[5]

### C. Supplemental Class Notice

On January 22, 2015, the Plaintiffs and Defendants filed a stipulation regarding supplemental class notice. ECF No. 124. In that stipulation, the parties agreed to mail a

---

[5] On February 9, 2015, Plaintiffs filed a motion to supplement record related to the motion for final approval. ECF No. 97 ("Motion to Supplement"). In the Motion to Supplement, Plaintiffs requested leave to supplement the record for final approval with an email exchange between counsel for the *Scott-George* plaintiff and Defendants in *Chavez*. In that email, counsel for the *Scott-George* plaintiff states that he is contemplating filing an objection to the *Chavez* settlement and that his "preference is to resolve this amicably, and that would only work if you and [Plaintiffs' counsel] are agreeable to working something out with me." ECF No. 135-1, at 5. Plaintiffs argue this document is relevant because it shows that counsel for the *Scott-George* plaintiff (who also represents the objector to the *Chavez* settlement) is motivated by a desire "to extract a more favorable settlement in the *Scott-George* case." Mot. Supp. at 3. However, this fact does not cure the deficiencies in the release and class notice. Moreover, on February 4, 2015, Defendants filed this same email with Defendants' opposition to proposed intervenors' motion for leave to file motion for reconsideration. *See* ECF No. 131-2. Therefore, the Motion to Supplement is DENIED.

12
Case No.: 13-CV-01797-LHK
ORDER DENIAL FINAL APPROVAL OF CLASS ACTION SETTLEMENT

supplemental class notice to all class members to "include specific reference to *Lapan v. PVH Corp., et al.* . . . and *Scott-George v. PVH Corp.* . . . and to inform Class Members that by not opting-out of the *Chavez* settlement, they may be waiving certain rights in the *Lapan* and *Scott-George* cases, including but not limited to Labor Code section 203 claims." *Id.* at 1. The parties proposed the stipulation as an alternative to the Court denying final approval. *See id.* However, this Court cannot "delete, modify, or substitute certain provisions [of a settlement agreement]. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks and citation omitted). Because granting the parties' stipulation would necessarily modify the provisions of the settlement agreement regarding notice to class members, this Court cannot grant the stipulation. Therefore, the stipulation is DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES the parties' joint motion for final approval. Accordingly, Plaintiffs' motion for attorneys' fees and costs, and class representative enhancement, ECF No. 89, is DENIED as moot.

**IT IS SO ORDERED.**

Dated: February 11, 2015

_____
LUCY H. KOH
United States District Judge

13
Case No.: 13-CV-01797-LHK
ORDER DENIAL FINAL APPROVAL OF CLASS ACTION SETTLEMENT