UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESSIE CHAVEZ, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PVH CORPORATION, et al.,<br><br>Defendants. | Case No. 13-CV-01797-LHK<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS; AND DENYING *EX PARTE* MOTION TO INTERVENE**<br><br>Re: Dkt. Nos. 163, 164, 202 |

This matter is before the Court on Plaintiffs' motion for final approval of the proposed class action settlement ("Settlement") between individual and representative Plaintiffs Jessie Chavez, Anabel Armenta, and the Class they represent (collectively, "Plaintiffs") and PVH Corporation, Tommy Hilfiger Retail, LLC, and PVH Retail Stores LLC (collectively, "Defendants"). ECF No. 164 ("Mot. for Final Approval"). Class Counsel has also filed a motion for approval of attorney's fees, costs, and class representative awards. ECF No. 163 ("Mot. for Atty's Fees"). An *ex parte* motion to intervene was also filed. ECF No. 202. The Court held a Final Approval Hearing on December 17, 2015.

1

Having considered these motions, the parties' Settlement Agreement, the record in this case, and the arguments at the Final Approval Hearing, IT IS HEREBY ORDERED as follows:

Unless otherwise defined herein, all terms contained herein shall have the same meaning as set forth in the Settlement Agreement.

The Court has jurisdiction over the subject matter of the Settlement Agreement with respect to and over all parties to the Settlement Agreement, including all Class Members and Defendants.

## I.     The Settlement is Fair, Adequate, and Reasonable

In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement "is fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). A district court may consider some or all of the following factors when making this determination: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625. The Court finds that the Settlement is fair, adequate, and reasonable in light of these factors.

First, the Settlement reflects the strength of Plaintiffs' case as well as Defendants' position. Courts have noted that uncertainty favors approval of a settlement. *See, e.g.*, *Browning v. Yahoo! Inc.*, 2007 WL 4105971, *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval"). Here, there are a few key uncertainties with regard to Plaintiffs' case. First, there is a risk that Plaintiffs would have been unsuccessful in moving for class certification. Second, Cal. Labor Code § 203 includes a willfulness requirement which could have been difficult to prove. Likewise, Cal. Labor

2

Case No. 13-CV-01797-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS; AND DENYING *EX PARTE* MOTION TO INTERVENE

Code § 226 requires that the alleged failure to maintain accurate records be "knowing and intentional." Cal. Labor Code § 226.[1]  Defendants intended to contest each of these requirements. The third-party mediator involved in settling this action acknowledged some of these risks. *See* ECF No. 58-3 at 2–3.  Third, other courts have held that the use of payroll debit cards does not violate provisions of the California Labor Code that were not asserted in the instant case. *See, e.g.*, *Holak v. Kmart Corp.*, 2012 WL 6202298, *6 (E.D. Cal. Dec. 12, 2012) (finding that payroll debit cards do not violate Cal. Labor Code §§ 212 & 221 where "the employees are fully informed of the service and it is represented as an alternative method for wage payment for which their participation is optional."). Moreover, the California Division of Labor Standards Enforcement Agency has also opined that payroll debit cards may not violate Cal. Labor Code §§ 212 & 221. *Id.* Accordingly, the relative strengths and weaknesses of Plaintiffs' case weighs in favor of final approval.

Second, the risks, expense, complexity, and likely duration of further litigation also support final approval. Had litigation proceeded without settlement, Plaintiffs would have had to move for class certification and might have needed to defend against a motion for summary judgment. Further litigation would have likely required Plaintiffs to undertake significantly more discovery. Taken together, these circumstances suggest that further litigation would have been costly and risky.

Third, the amount offered in settlement weighs in favor of final approval. On average, each Class Member shall receive approximately $130. Although the settlement amount is less than Defendants' potential financial exposure, given the risks and uncertainties of litigation and the potentially lengthy delay before any recovery, the certainty of cash in hand for Class Members

---

[1] Plaintiffs' other causes of action, asserted under the California Private Attorney General Act and California's Unfair Competition Law, are predicated on Plaintiffs' claims under Cal. Labor Code §§ 201–04 and 226. *See* ECF No. 40-1 ("Second Amended Compl.") ¶¶ 34–44. These causes of action therefore largely rise and fall based on the strength of Plaintiffs' Cal. Labor Code § 203 and § 226 claims.

1    weighs in favor of final approval.  Moreover, Class Members are not required to submit a claim
2    form, and there is no possibility of reversion.
3      Fourth, the extent of discovery completed and the stage of proceedings support approval.
4    Plaintiffs propounded requests for production and interrogatories to Defendants, and Defendants
5    produced payroll data to Plaintiffs.  The parties have met and conferred regarding discovery
6    responses.  Finally, Plaintiffs took the deposition of Defendants' 30(b)(6) witness and Defendants
7    deposed Jessie Chavez.  Discovery was thus underway, and both parties had developed a
8    perspective on the strengths and weaknesses of this action.
9      Fifth, the experience and views of counsel weigh in favor of final approval. The parties
10   have been represented by experienced counsel, and all counsel favor settlement.
11     Finally, the reaction of Class Members supports final approval.  Out of 9,474 putative
12   Class Members, none submitted a timely objection and only 4 opted out (approximately 0.04% of
13   the Class).  Such low rates of objections and opt-outs are "indicia of the approval of the class."
14   *Hughes v. Microsoft Corp.*, 2001 WL 34089697, *8 (W.D. Wash. Mar. 26, 2001) (finding indicia
15   of approval when 9 class members out of 37,155, or just over .02%, who received notice
16   submitted objections, and "less than 1%" opted out); *see Sugarman v. Ducati N. Am., Inc.*, 2012
17   WL 113361, *3 (N.D. Cal. Jan. 12, 2012) (objections from 42 of 38,774 class members—more
18   than 0.1 percent—is a "positive response"); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d
19   566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of
20   90,000 class members objected to the settlement (.05%), and 500 class members opted out
21   (.56%)).  Accordingly, the Court finds that the Settlement is fair, adequate, and reasonable within
22   the meaning of Rule 23(e) of the Federal Rules of Civil Procedure.

### II. The Objections Filed on December 13, 2015 and December 15, 2015 and the *Ex Parte* Motion to Intervene Filed on December 15, 2015 are Untimely and Lack Merit

25     The Court notes that a number of untimely objections were filed on December 13, 2015
26   and December 15, 2015.  ECF Nos. 170–194; ECF No. 198.  These objections all relate to the

*Scott-George* action, currently pending before U.S. District Judge Troy Nunley in the Central District of California. *See Scott-George v. PVH Corporation*, No. 2-13-CV-00441-TLN-DAD (E.D. Cal.). In addition, Ronald Bae ("Bae"), attorney for the *Scott-George* plaintiffs, has filed a response to a request for judicial notice, ECF No. 167, and an *ex parte* motion to intervene, ECF No. 202. All of these filings essentially set forth the same argument: that class certification was recently granted in *Scott-George*, and thus, this Court should stay final approval of the instant action and allow the *Scott-George* plaintiffs to continue litigating their case. For the reasons that follow, the Court finds these objections not well taken and denies the *ex parte* motion to intervene.

First, the objections are untimely. The Claims Administrator mailed all notices to putative Class Members on August 28, 2015. ECF No. 164-3 at 3. This notice states that "[a]ll objections must be filed with the Court not later than October 27, 2015" and that "[l]ate objections will not be considered." ECF No. 196-1 at 6. On this basis alone, the Court may "refuse[] to consider the objection[s]" that have been made. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, *3 (N.D. Cal. Dec. 7, 2011); *In re Heritage Bond Litig.*, 2005 WL 1594403, *10 n.9 ("This Court received an untimely objection via mail . . . ten days after the filing deadline for oppositions. Due to its lateness, . . . the Court does not consider [this objection] in its analysis."); *In re UnitedHealth Grp. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 n.6 (D. Minn. 2009) (same).

Second, the objections are procedurally improper. The notice provided to Class Members states that all objections must be filed with the Court, mailed to the Claims Administrator, and mailed to Class Counsel and Defendants' counsel. The objections at issue were only filed before the Court—no objections were mailed to the Claims Administrator, Class Counsel, or Defendants' counsel. ECF No. 196-2 at 2–3. Again, on this basis alone, the Court may refuse to consider the objections at issue. In addition, at least two objections were made by individuals who do not appear to be Class Members. ECF No. 196-2 at 2. These objections will not be considered. *See, e.g.*, *Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, *12 (N.D. Cal. Aug. 28, 2013)

(overruling objections that were submitted because these objections "fail[ed] to comply with the procedural requirements for objecting to the Settlement.").

Third, the notice in the instant case informed Class Members of the existence and nature of the *Scott-George* action. Specifically, the notice stated that "[t]hree other lawsuits, which include some similar or overlapping claims, are pending against PVH Corp. in federal courts. . . . *Scott-George v. PVH Corp.*, Eastern District of California Case No. 2:13-CV-0441, includes wage statement and Money Network payroll distribution service claims along with several other unrelated labor law claims only against PVH Corp." *See* 196-1 at 8. The notice also stated that not opting out in *Chavez* could result in a release of some of the claims at issue in *Scott-George*. *Id.* Thus, Class Members knew that Final Approval of the instant action would bar recovery on certain claims in *Scott-George*.

Fourth, there is no authority that requires the Court to stay the instant action in order to allow *Scott-George* to proceed. In his response to the request for judicial notice, Bae cited and referred to *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985). *Kleiner* states that "class counsel represents all class members as soon as a class is certified." *Id.* Bae argues that this principle creates an anti-contact rule that prevents Class Counsel in the instant case from moving forward with final approval in the instant case. However, as Bae concedes, this rule applies only to Defendants, not to Class Counsel in the instant case. *See* ECF No. 167 at 3–4 ("*Defendants' attorneys* are subject to the 'anti-contact' rule, and must 'refrain from discussing the litigation with members of the class as of the date of class certification.'") (quoting *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) (emphasis added). Moreover, Bae's arguments would fail even under a broader interpretation of the anti-contact rule. The Court's August 6, 2015 preliminary approval order conditionally certified a class in *Chavez* and appointed Class Counsel pursuant to Federal Rule of Civil Procedure 23(e) and Federal Rule of Civil Procedure 23(g). The class certification order in *Scott-George* was issued on November

6

Case No. 13-CV-01797-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS; AND DENYING *EX PARTE* MOTION TO INTERVENE

19, 2015. Thus, the class in *Chavez* was certified and Class Counsel appointed more than three months before the class was certified and counsel was appointed in *Scott-George*.

Fifth, only some of the claims in *Chavez* overlap with the claims in *Scott-George*. The class certification order in *Scott-George* certified the following eight subclasses: Overtime I Subclass, Overtime II Subclass, Security Bag Check Subclass, Paycard Subclass, Meal Period Subclass, Rest Period Subclass, Late Pay Subclass, and Wage Statement Subclass. *Id.* at 3–4. As Bae, *Chavez* Class Counsel, and Defendants conceded at the Final Approval Hearing, *Chavez* only implicates two of these eight subclasses—the Paycard Subclass and the Wage Statement Subclass. The remaining subclasses are unaffected.

Sixth, there is no merit to Bae's assertion, made at the Final Approval Hearing, that the class certification order in *Scott-George* is a "final" order that trumps the Court's decision to conditionally certify a class in this action. The class certification order in *Scott-George* was not a "final" order in any sense. In fact, Judge Nunley reserved the right to reconsider his decision to grant class certification in *Scott-George* depending on the resolution of the instant action. Specifically, Judge Nunley stated: "Defendant argues that Subclass IV may be mooted by the *Chavez* class action settlement. However, Defendant's argument requires that the Northern District of California Court grant final approval of the settlement. The Court will not base its determination of whether to certify a class on the probability of what will happen in another legal matter outside of this district. In the event that the *Chavez* class action settles and the settlement subsumes the class at issue here, the Court would be willing to reconsider the matter at that time." ECF No. 165-1 at 7. Judge Nunley thus explicitly recognized the overlap between this action and *Scott-George*, and acknowledged that final approval in *Chavez* may necessitate reconsideration of class certification of Subclass IV in *Scott-George*.

Seventh, one of the overlapping claims at issue—the paycard claim—was first raised by plaintiffs in *Chavez*. Approximately seven months after *Chavez* was filed, the *Scott-George* plaintiffs filed a Third Amended Complaint. ECF No. 136 at 4. "The Third Amended Complaint

7

added, for the first time, a factual allegation that PVH Corporation paid its employees with payroll debit cards." *Id*.

Eighth, also with respect to the paycard claim, which is asserted under Cal. Labor Code § 203, the Court notes that it initially denied final approval in this action because of concerns that the first *Chavez* "release would also release claims based on facts which were not alleged in *Chavez*." *Id.* at 9. "Specifically, . . . a class member who agreed to the *Chavez* release would be releasing *any* claim for damages under Labor Code § 203 that were based on violations of California laws governing payments for meal breaks, rest breaks, bag checks, overtime, double overtime, and vested vacation pay, the claims asserted in *Scott-George*." *Id.* (emphasis added).[2] Thus, the first *Chavez* release would require Class Members to release both the paycard claim actually asserted in *Chavez* and other Cal. Labor Code § 203 claims not asserted in *Chavez* but asserted in *Scott-George*. *Id.* at 10. This would violate the identical factual predicate rule, which provides that "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only* where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks omitted) (emphasis added). In response to the Court's decision denying final approval, the parties in *Chavez* amended the Settlement Agreement to carve out the paycard claim from any other claims arising out of Cal. Labor Code § 203. Specifically, the Settlement now provides that "[t]he release of Cal. Lab. Code § 203 penalties . . . shall be limited to claims arising out of use of the Money Network payroll distribution service and shall not affect the penalty rights of a Class Member . . . in other litigation with a different factual predicate." ECF No. 143 ("Settlement") ¶ 35.

---

[2] This Court was not informed of the existence of the *Scott-George* action until "the plaintiff in *Scott-George* filed a notice of pendency" on the *Chavez* docket on August 18, 2014, after the Court's July 17, 2014 decision to grant preliminary approval. ECF No. 136 at 5–6.

8
Case No. 13-CV-01797-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS; AND DENYING *EX PARTE* MOTION TO INTERVENE

Ninth, the objectors have not demonstrated how the Class would benefit if the Court were to deny final approval. Final approval in the instant action could provide Class Members with an immediate monetary recovery. Class Members do not need to submit a claim form, and there is no possibility of reversion. Moreover, there is no evidence that Class Members would recover more on the instant claims in the *Scott-George* action.

Tenth, with respect to Bae's *ex parte* motion to intervene, the Court on November 20, 2014 already denied a previous motion to intervene filed by Bae on behalf of the *Scott-George* plaintiffs. ECF No. 106. Bae's appeal of this November 20, 2014 Order is currently pending before the Ninth Circuit. Specifically, in the November 20, 2014 Order, this Court found the previous motion to intervene to be untimely. *See id.* at 10 ("Proposed Intervenors filed their motion after the Court had already granted preliminary approval, after the parties had invested time and resources into reaching and relying on the proposed settlement agreement, after the class received class notices, and more than six months after Proposed Intervenors had actual knowledge that the settlement agreement might adversely affect their interests."). Because timeliness is a required element for both intervention as a matter of right and for permissive intervention, the Court concluded that intervention was not warranted. *See* ECF No. 106 at 12; Fed. R. Civ. P. 24(a) (intervention as a matter of right); Fed. R. Civ. P. 24(b) (permissive intervention). This same reasoning governs the instant *ex parte* motion. The instant *ex parte* motion was filed on December 15, 2015—more than four months after the Court's decision to grant preliminary approval and nearly two months after the deadline to object to final approval. On this basis alone, the *ex parte* motion to intervene is denied.

Additionally, the Court notes that the *ex parte* motion fails to comply with Civil Local Rule 7-10. Civil Local Rule 7-10 provides that, "[u]nless otherwise ordered by the assigned Judge, a party may file an *ex parte* motion, that is, a motion filed without notice to opposing party, only if a statute, Federal Rule, local rule or Standing Order authorizes the filing of an *ex parte* motion in the circumstances." Civ. L.R. 7-10. Moreover, any *ex parte* motion "must include a

9
Case No. 13-CV-01797-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS; AND DENYING *EX PARTE* MOTION TO INTERVENE

citation to the statute, rule or order which permits the use of an *ex parte* motion to obtain the relief sought." *Id.* The instant motion does not identify a statute, rule, or order that would allow the *Scott-George* plaintiffs to proceed on an *ex parte* basis.

As a final point, the *ex parte* motion expresses concern over the parties' selection of the Bet Tzedek Employment Rights Project ("ERP") for *cy pres* purposes. These concerns are unfounded. Within the Ninth Circuit, "*[c]y pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). The parties' selection of the ERP for *cy pres* distribution sufficiently addresses these requirements. On December 10, 2015, Class Counsel filed a declaration by Gus May, the Directing Attorney of the ERP. In this declaration, May stated that the ERP "seeks to enforce minimum labor standards in the workplace by assisting low-wage workers through" a variety of different approaches. ECF No. 168-2 at 2. Since 2001, "ERP staff . . . have helped over 5,400 individuals in cases involving unpaid wages, improper denial of unemployment insurance benefits, and other workplace issues." *Id.* at 3. One of the central claims at issue in the instant action concerns the unpaid wages of Class Members because of Defendants' use of debit paycards. Finally, "[a]lthough based in Los Angeles, ERP works to protect low-wage workers throughout California." *Id.* Under these facts, the Court finds that the proposed *cy pres* distribution sufficiently accounts "for the nature of the plaintiffs' lawsuit," "the objectives of the underlying statutes," and the "interests of the silent class members." *Nachshin*, 663 F.3d at 1036.

To summarize, none of the untimely objections warrant rejection of the Settlement. *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, *15 (C.D. Cal. July 29, 2010) ("The fact that there is opposition does not necessitate disapproval of the settlement. Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair.") (internal quotation marks omitted). Moreover, the *ex parte* motion to intervene lacks merit and is procedurally improper. Accordingly, the Court denies the *ex parte*

motion to intervene and overrules the untimely objections made on December 13, 2015 and December 15, 2015.

### III. The Notice and Notice Methodology Were Appropriate

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the parties provide Class Members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

The Court finds that the notice program, previously approved by the Court, ECF No. 161, has been implemented and complies with Rule 23(c)(2)(B). Notice was sent to all Class Members via first class mail. The notice provided a clear description of the Class as well as Class Members' rights and options. The notice explained how to opt out of the Settlement, how to object to the Settlement, and how to contact Class Counsel and the Notice Administrator. The notice and notice methodology was thus reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice.

### IV. The Allocation Plan is Fair, Adequate, and Reasonable

The allocation plan provides payment to the California Labor & Workforce Development Agency and the Claims Administrator in accordance with the terms of the Settlement Agreement and pursuant to California law. The allocation plan then provides payment for attorney's fees and other costs in accordance with the terms of the settlement agreement. Finally, the remainder of the settlement fund is to be distributed between Participating Money Network Subclass Members and Class Members. Settlement ¶ 28.

The Money Network Subclass is comprised of all Class Members who "were paid at any time via the Money Network payroll distribution service" and who "paid at least one fee or charge in connection with the use of this service." *Id.* ¶ 25. Money Network Subclass Members must submit a claim form. The allocation plan provides that each Money Network Subclass Member shall be fully reimbursed for all fees paid in connection with their use of the payroll debit card program. Thus, the allocation plan provides recovery to Money Network Subclass Members based on the extent of their injuries.

The Class is comprised of "all current and former employees who worked for Defendants in California during any portion of the period from March 20, 2009 through July 17, 2014." *Id.* ¶ 39. Class Members do not need to submit a claim form, and there is no possibility of reversion. The allocation plan provides each Class Member with a proportional share of the Settlement based upon the total number of workweeks each Class Member worked while employed by Defendants during the class period. The allocation plan thus also provides recovery to Class Members based on the extent of their injuries.

The District Court for the Northern District of California has held that "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, *1 (N.D. Cal. June 18, 1994). Other courts are in accord. *See, e.g.*, *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 404 (D.N.J. 2006) (finding pro rata distribution "eminently reasonable and fair to the class members."); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997) (describing fractional shares as "cost-effective, simple, and fundamentally fair."). Consonant with the reasoning in these decisions, the Court finds the proposed allocation plan to be fair, adequate, and reasonable.

## V.     The Request for Attorney's Fees is Reasonable

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "[T]he choice between lodestar and percentage calculation depends on the circumstances, but [] 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'" *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). The district court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941–42 (citations and internal quotation marks omitted). These factors include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

In the instant case, Class Counsel request $462,500 in attorney's fees. Class Counsel reported in its November 12, 2015 motion for approval of attorney's fees a lodestar of approximately $425,775, supported by appropriate documentation. Class Counsel's request thus represents a 1.09 multiplier of Class Counsel's lodestar. However, since the filing of the motion, class certification was granted in *Scott-George* on November 19, 2015, which resulted in over forty new filings in the instant case. These entries include Bae's December 9, 2015 response to the request for judicial notice, Bae's December 15, 2015 *ex parte* motion to intervene, and approximately 26 untimely objections filed between December 13, 2015 and December 15, 2015,

shortly before the December 17, 2015 Final Approval Hearing. Class Counsel responded to each of these filings. *See, e.g.*, ECF No. 196 ("Mot. to Strike Objections"); ECF No. 204 ("Response to *Ex Parte* Motion"). In addition, to respond to Bae's filings, Class Counsel filed a supplemental declaration by the Claims Administrator and a declaration by Gus May, the Directing Attorney from Bet Tzedek ERP. Class Counsel's lodestar is likely much higher than what was reported on November 12, 2015 ($425,775), which would likely result in a much lower requested multiplier.

The Court also finds the requested attorney's fees award reasonable in light of the factors set forth in *In re Bluetooth.* First, with respect to the quality of representation, Class Counsel is experienced in litigating wage and hour class actions. In addition, Class Counsel engaged in motions practice and discovery in this case.

Second, as to the benefit obtained for the class, the $1,875,000 Settlement represents a significant award, particularly in light of the legal uncertainties in this case. Each Class Member shall, on average, receive a $130 award. In addition, the Settlement is non-reversionary and does not require class members to submit a claim form.

Third, as to the complexity and novelty of the issues presented, there were risks and uncertainty to continuing litigation, as discussed above.

Finally, there appears to be some risk of nonpayment, given the risks and uncertainty in this litigation. This risk would suggest that some enhancement of Class Counsel's lodestar is appropriate.

After weighing the factors outlined above, the Court finds an award of $462,500 in attorney's fees to be appropriate. In addition, the Court believes that three additional factors counsel in favor of Class Counsel's request.

First, in *Vizcaino*, the Ninth Circuit conducted a survey of attorney's fees awards in common fund cases between 1996 and 2001. 290 F.3d at 1052–54. In the vast majority of cases (20 of 24, or 83%), the multiplier ranged from 1.0-4.0. *Id.* at 1051 n.6. A multiplier of 1.09 falls within the lower end of this range.

Second, the Claims Administrator costs in this action totaled approximately $111,073.11. Mot. for Final Approval at 4. These costs significantly exceed the $61,000 estimate provided for in the initial settlement of this action, largely because the Claims Administrator had to send out a second round of notices to Class Members. During the Final Approval Hearing, Class Counsel stated that $61,000 of the Claims Administrator's costs would be paid for out of the Settlement, and that Class Counsel personally and Defendants would evenly divide and pay for the remaining costs. Class Counsel would thus have to pay approximately $25,000 in Claims Administrator costs out of pocket. This expenditure essentially reduces Class Counsel's attorney's fees award by $25,000.

Third, a $462,500 award would represent 25% of the Settlement. Under Ninth Circuit case law, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth*, 654 F.3d at 942; *see also Six Mexican Workers*, 904 F.2d at 1311 ("[W]e established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."). Class Counsel's request thus represents an appropriate multiplier under the lodestar method when compared to other common fund cases and represents the benchmark award under the percentage-of-recovery method. Under these circumstances, the Court GRANTS Class Counsel's request for $462,500 in attorney's fees.

## VI.   The Request for Costs and Expenses is Reasonable

Class Counsel also requests reimbursement for out-of-pocket expenses incurred to prosecute this class action. Class Counsel states that these expenses were incidental and necessary to the effective representation of the Class. The Court agrees. Class Counsel engaged in document review, prepared for and took depositions, and performed a damages analysis prior to mediation. As a result of Class Counsel's efforts, Class Counsel were able to better assess the strengths and weaknesses of this case. Accordingly, the Court GRANTS Class Counsel's request to recover costs and expenses of $19,465.32.

## VII.   The Request for Class Representative Awards is Reasonable

In evaluating whether representative plaintiffs are entitled to reasonable incentive payments, district courts "must evaluate their awards individually, using 'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (alterations in original) (quoting *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).

The Ninth Circuit has established $5,000 as a reasonable benchmark award for representative plaintiffs. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Plaintiff Jessie Chavez requests an award of $5,000 and Plaintiff Anabel Armenta requests an award of $2,500. The Court finds this request reasonable in light of the *Staton* factors discussed above.

First, with respect to the actions taken by plaintiff to protect the interests of the class, both Chavez and Armenta allege active involvement with counsel in litigating the case and in analyzing and approving various settlement terms. *See* ECF 163-3 at 2.

Second, as to the benefit to the class, it appears that Class Members will receive approximately $130 each. The requested incentive payments ($7,500 in total) would represent less than 0.005% of the Settlement. Thus, Class Members have received a significant benefit, and the requested awards to Chavez and Armenta represent only a small part of this benefit.

Third, with respect to the amount of time and effort expended, Chavez states that she has devoted about 40 hours to this case. ECF No. 163-3 at 2. Chavez states that she had her deposition taken, that she attended a full-day mediation, and that she made herself available to counsel during the pendency of the proceedings. Armenta estimates that she devoted 15 hours to this case. On the basis of the length of this case, the fact that Chavez was deposed, and the fact that Chavez was present at the mediation, it is credible that Chavez spent a significant amount of time and effort in helping counsel litigate this case. Likewise, a smaller award is appropriate for Armenta; compared to Chavez, Armenta had a smaller role in litigating this case.

16
Case No. 13-CV-01797-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFFS AWARDS; AND DENYING *EX PARTE* MOTION TO INTERVENE

Fourth, as to the reasonable fears of workplace retaliation, both Chavez and Armenta state that "future potential employers may review [the public record of this suit]," "which could have a negative impact on [their] future employment potential." ECF No. 163-4 at 2.

Accordingly, the Court GRANTS Class Counsel's request for a $5,000 representative plaintiff award to Chavez and a $2,500 representative plaintiff award to Armenta.

## VIII. Conclusion

To conclude, the Court GRANTS Plaintiffs' motion for final approval of the proposed class action settlement, GRANTS Class Counsel's motion for approval of attorney's fees, costs, and class representative awards, and DENIES the *ex parte* motion to intervene.

In consideration of the Class Settlement Amount, and for other good and valuable consideration, each of the Class Members who has not validly excluded himself/herself from this Settlement shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all claims against Defendants in accordance with the terms of the Settlement Agreement and as the released claims are defined in the Settlement. This Judgment is the Final Judgment in the suit as to all Class Members who have not timely excluded himself/herself from this Settlement.

Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over: (a) implementation of the Settlement Agreement and its terms; (b) distribution of the Class Settlement Amount, the Class Representative Enhancement Awards, Claims Administrator fees, California Labor & Workforce Development Agency payment, and the Attorney's Fees and Costs; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement, and the administration of claims by Class Members.

In the event that the Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, *nunc pro tunc*, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the status quo ante rights of Plaintiffs, Class Members, and Defendants.

This Court finds that there is no just reason for delay and directs Judgment and immediate entry by the Clerk of the Court. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 18, 2015

_____
LUCY H. KOH
United States District Judge